IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES WARREN AND MARIE
WARREN,

                    Plaintiffs,

    v.

STATE FARM FIRE AND CASUALTY
COMPANY,

                    Defendant.

CIVIL ACTION
NO. 23-3908

## OPINION

**Slomsky, J.**                                                                                            **June 26, 2024**

## I.      INTRODUCTION

This case concerns an insurance dispute arising from damage to a condominium. Defendant State Farm Fire and Casualty Company ("Defendant") issued to Plaintiffs Charles and Marie Warren ("Plaintiffs") an insurance policy covering their real and personal property in Newtown Square, Pennsylvania. While the policy was in effect, Plaintiffs suffered loss and damage to their property. Subsequently, Plaintiffs submitted to Defendant a demand for benefits, which was denied.

On June 29, 2023, Plaintiffs filed suit in the Court of Common Pleas of Philadelphia County, Pennsylvania, alleging claims for (1) breach of contract and (2) bad faith pursuant to 42 Pa. C.S.A. § 8371. (See Doc. No. 1-3.) On September 18, 2023, Plaintiff filed a Second Amended Complaint ("SAC"), which is the operative Complaint in this action. Defendants removed the case to this Court based upon diversity of citizenship jurisdiction, 28 U.S.C. § 1332(a). (Doc. No. 1.) On October 16, 2023, Defendant filed a Motion to Dismiss Plaintiffs' Second Amended Complaint, which is now ripe for disposition. (Doc. No. 5.)

## II.    BACKGROUND[1]

Plaintiffs Charles and Marie Warren ("Plaintiffs") own real property located at 205 E. Chelsea Circle, Newtown Square, PA, 19073-2109 (the "Property").  (Doc. No. 1-5 at 3.)  On May 14, 2021, Plaintiffs "suffered direct physical loss and damage" to the Property.  (Id. at 4.)  At the time, the Property was insured under the Greene Countrie Village Condominium Association Master Policy (the "Greene Countrie Policy") and Plaintiffs' betterments and improvements to the Property were insured by Defendant State Farm Fire and Casualty Company (the "State Farm Policy").  (Id. at 5.)

Immediately following the loss, Plaintiffs submitted claims under both the Greene Countrie Policy and the State Farm Policy.  (Id.)  On July 26, 2021, Plaintiffs also submitted a list of betterments and improvements for which they sought coverage under the State Farm Policy.  (Id.)

On September 1, 2021, an employee of Defendant wrote to Plaintiffs' adjuster stating that the Greene Countrie Policy was the primary policy and that all the units would be rebuilt under it. (Id.) There was "significant delay," however, in getting information on the Greene Countrie Policy as to what was being covered under that policy.  (Id.)  The delay, which was not the fault of Plaintiffs, led to the denial of their claims under the State Farm Policy due to the passage of a one-year statute of limitations provision in the State Farm Policy.  (Id.)  To date, Defendant has refused to pay benefits to Plaintiffs.  (Id.)

On June 29, 2023, Plaintiffs filed suit against Defendant in the Court of Common Pleas of Philadelphia County, Pennsylvania, alleging claims for (1) breach of contract and (2) bad faith pursuant to 42 Pa. C.S.A. § 8371.  (See Doc. No. 1-3.)  On August 8, 2023, Plaintiffs filed an

---

[1]    The following facts are taken from the Second Amended Complaint and are accepted as true for deciding the Moton to Dismiss.

2

Amended Complaint alleging the same two claims.  (See Doc. No. 1-4.)  On September 18, 2023, Plaintiffs filed a Second Amended Complaint ("SAC"), again alleging claims for (1) breach of contract ("Count I") and (2) bad faith pursuant to 42 Pa. C.S.A. § 8371 ("Count II").  (See Doc. No. 1-5.)  As noted earlier, the SAC is the operative Complaint in this case.

On October 9, 2023, Defendant removed the case to this Court based upon diversity of citizenship jurisdiction, 28 U.S.C. § 1332(a).  (Doc. No. 1.)  On October 16, 2023, Defendant filed the instant Motion seeking to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 5.)  On November 6, 2023, Plaintiff filed a Response in Opposition.  (Doc. No. 8.)  On November 13, 2023, Defendant filed a Reply.  (Doc. No. 9.)  On January 11, 2024, the Court held a hearing on the Motion.  (Doc. No. 11.)  The Motion is ripe for disposition.

## III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

3

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.   ANALYSIS

In its Motion to Dismiss, Defendant argues that Count I of the SAC (breach of contract) should be dismissed in its entirety for failure to comply with the State Farm Policy's one-year suit

limitation and Count II of the SAC (bad faith) should be dismissed in its entirety because Plaintiffs have not pled a plausible claim of bad faith.  (Doc. No. 5.)  Each argument will be discussed in turn.

### A.    Count I (Breach of Contract)

#### 1.    Statute of Limitations

Plaintiffs allege that Defendant breached its contract with Plaintiffs by refusing to cover Plaintiffs' loss under the State Farm Policy.    (Doc. No. 1-5 at 4.)  Defendant counters that Plaintiffs' breach of contract claim is barred by the one-year suit limitation in the State Farm Policy, which is enforceable under Pennsylvania law. (Doc. No. 5 at 2.)  Ordinarily, "[w]hile the language of [Federal Rule of Civil Procedure] 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384, n.1 (3d Cir. 1994).  Here, the statute of limitations defense can be resolved from the face of the Second Amended Complaint because it incorporates the State Farm Policy which is integral to the breach of contract claim.  And for reasons that follow, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint will be granted as to Count I pursuant to the suit limitations clause.[2]

Suit limitation clauses in insurance policies are not imposed by statute; rather, they are contractual undertakings between parties to limit the time for bringing suit on the contract.  Gen. State Auth. v. Planet Ins., 464 Pa. 162, 346 A.2d 265 (Pa. 1975).  The limitation provision under

---

[2]    As discussed below, Plaintiffs also argue that equitable estoppel tolled the running of the statute of limitations.  This argument it without merit.

the State Farm Policy here sets a time limit of "one year after the date of loss or damage" for commencing suit:

> No action will be brought against us unless there has been full compliance with the policy provisions. Any action by any party must be started within one year after the date of loss or damage.

(Doc. No. 5-2 at 3.)[3]

"The law is clear that such a clause, setting time limits upon the commencement of suits to recover on a policy, is valid and will be sustained." Gen. State Auth., 346 A.2d at 266; Commonwealth v. Transamerican Ins., 462 Pa. 268, 341 A.2d 74, 76 (Pa. 1975) ("This Commonwealth has long recognized the validity of a policy provision limiting the time of bringing suit under its terms and rendering the normal statute of limitations for the cause of action in question inapplicable."); Schreiber v. Pa. Lumberman's Mut. Ins., 498 Pa. 21, 444 A.2d 647, 649 (Pa. 1982); see also Swan Caterers, Inc. v. Nationwide Mut. Fire Ins., No-12-24, 2012 WL 5508371, at *4 (E.D. Pa. Nov. 13, 2012) (upholding one-year suit limitation provision). The limitation period runs from "the date of the occurrence of the destructive event or casualty insured against." Petraglia v. Am. Motorists Ins., 284 Pa.Super. 1, 424 A.2d 1360, 1362 (Pa. Super. Ct. 1981) (quoting Gen. State. Auth., 346 A.2d at 267). Failure to bring a claim within the limitation period in the Policy will result in an "absolute bar" to the claim. Toledo v. State Farm Fire & Cas. Co., 810 F.Supp. 156, 158 (E.D. Pa. 1992) (citing Gen. State Auth., 346 A.2d at 742-43).

Here, the SAC alleges that on or about May 14, 2021, Plaintiffs' property "suffered direct physical loss and damage." (Doc. No. 1-5 at 4.) On May 12, 2023, nearly two years later, Plaintiffs commenced this action by filing a Writ of Summons in the Court of Common Pleas of Philadelphia

---

[3] As will be discussed infra, the limitation provision in the State Farm Policy does not apply to Plaintiffs' bad faith claim.

6

County, Pennsylvania.[4]  (Doc. No. 5-3 at 4.)  As stated above, the suit provision in the State Farm Policy requires the insured to file an action within one year of the date of loss.  Accordingly, Plaintiffs should have filed suit by May 14, 2022.  May 12, 2023, the date Plaintiffs filed suit, is nearly one year after the one-year deadline had passed.   Given the valid one-year suit commencement provision contained in the State Farm Policy, it is evident that Plaintiffs instituted this action beyond the State Farm Policy's limitation period.  Accordingly, absent proof of waiver or estoppel, Pennsylvania case law warrants dismissal of the breach of contract claim. Recognizing this legal impediment, Plaintiffs argue that the suit limitation should not be enforced on the basis of estoppel.  (Doc. No. 8 at 13.)

## 2.    Equitable Estoppel

"Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect."  Prime Medica Assocs. v. Valley Forge Ins., 970 A.2d 1149, 1157 (Pa. Super. Ct. 2009).  An insurer will be estopped from raising the suit limitation defense if there is clear and convincing evidence that the insurer induced the insured to justifiably rely, to the insured's detriment, on the insurer's words or conduct reflecting a decision not to invoke the defense.  Id.

"The determination of whether waiver or estoppel has occurred is a conclusion of law." Reinhart v. Erie Ins., No. 2034 MDA 2014, 2015 WL 6159391, at *7 (Pa. Super. Ct. Apr. 30, 2015).  "The insured must establish a factual basis to assert the defense of waiver or estoppel."  Id. This means the insured "must present 'reasonable grounds for believing that the time limit would be extended' or the insurer would not strictly enforce the suit limitation provision."  Id. (citation

---

4    On May 12, 2023, Plaintiffs commenced this action by filing a Writ of Summons and on June 29, 2023, a Complaint was filed.  (See Doc. No. 5-3.)

omitted).   Upon review of the facts alleged and viewing them in the light most favorable to Plaintiffs, they have failed to do so.

Here, Plaintiffs argue that the one-year provision is unreasonable "when applying it to [Defendant's] refusal to adjust the loss, and the substantial delay in the resolution of the claim." (Doc. No. 8 at 14.)   Further, Plaintiffs state that because "[b]oth parties were cooperating throughout the claim adjustment process and complying with the terms of the Policy," they did not file suit in the one-year time period.   (Id.)   However, Plaintiffs do not claim that Defendant made any statement to Plaintiffs that it would not rely on the suit limitation provision, nor did it display any intention through its conduct that it would not enforce the provision.   See Prime Medica Assocs., 970 A.2d at 1156-57.   Furthermore, there is no evidence that Defendant ever mentioned the possibility of a settlement of the claim, or even asked Plaintiffs to refrain from bringing suit, as would be required for an estoppel.   Id. at 1158 (holding estoppel defense invalid because insurer never mentioned possibility of settlement or induced insured to refrain from commencing suit).

In the SAC, Plaintiffs acknowledge the issue of the one-year limitation in the State Farm Policy.   In Count I, they assert:

> 13. Specifically, and to the extent that any of Plaintiff's claims fall outside of the contractual suit limitations provision, 42 Pa. C.S.A. § 5501(a) provides that contractual limitations of suit provisions, which are shorter than an applicable statute of limitations, are valid so long as they are not manifestly unreasonable." Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 580, 585-86 (E.D. Pa. 1999).

> 14. At the time of the loss, Plaintiff's condominium was insured under the Greene Countrie Village Condominium Association Master Policy, and Plaintiff's betterments and improvements were insured by the Defendant, State Farm.

> 15. Immediately following the loss, claims were submitted to the Greene Countrie Village Condominium Association Master Policy as well as the State Farm Policy, and a list of the betterments and improvements to be covered by the State Farm Policy were sent to Defendant on July 26, 2021 for payment.

8

16. On or about September 1, 2021, State Farm wrote to Plaintiff's adjuster stating that the Greene Countrie Village Condominium Association Master Policy "is primary, and that all the units will be rebuilt under the Condominium Association Master Policy."

17. However, there was significant delay getting information and payments information from the Greene Countrie Village Condominium Association Master Policy, without which it was impossible to determine what damage was, in fact, being paid by the Greene Countrie Village Condominium Association Master Policy and what damage was not being covered by the Greene Countrie Village Condominium Association Master Policy - thus, falling under the coverage provided by the State Farm Policy.

18. This delay was not caused by or due to any fault of Plaintiff.

19. Thus, enforcing a contractual suit limitation period would be manifestly unreasonable as there was no breach of the contract by the Defendant until it was determined that Defendant State Farm was refusing to pay for the betterments and improvements that were unpaid by the Greene Countrie Village Condominium Association Master Policy.

(Doc. No. 1-5 at 5-6.)

Here, Plaintiffs cite to Bostick v. ITT Hartford Grp., Inc., 56 F. Supp. 2d 580 (E.D. Pa. 1999) for the proposition that enforcing the State Farm Policy contractual suit limitation would be "manifestly unreasonable" because the delay in getting information on the Green Countrie Policy was not the fault of Plaintiffs. In Bostick, the court noted the well-established law that "contractual limitations of suit provisions, which are shorter than an applicable statute of limitations, are valid so long as they are not manifestly unreasonable." Bostick, 56 F. Supp. 2d at 586. There, the insurer had a similar one-year limitation period that ran from the date of the occurrence of a destructive event. Id. In Bostick, however, there was a dispute as to when the damage occurred. Id. For this reason, the court in Bostick denied defendants' motion for summary judgment based on time limitation. Id. That dispute is absent in this case where the date of loss is firmly established. Bostick, therefore, does not support Plaintiffs' argument. Consequently, for the

reasons explained above, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint will be granted as to Count I.

### B.    Count II (Bad Faith)

In Count II of the SAC, Plaintiffs allege that Defendant's conduct in handling Plaintiffs' insurance claims amount to "bad faith" within the meaning of the Pennsylvania bad faith statute, 42 Pa. C.S. § 8371.  (Doc. No. 1-5 at 6.)  In turn, Defendant argues that Count II of the SAC should be dismissed because Plaintiffs fail to state a plausible claim of bad faith.[5]  (Doc. No. 5-2 at 7.)  For reasons that follow, the Court agrees with Defendant.

Pennsylvania's bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

---

[5]    Unlike Plaintiffs' breach of contract claim, their bad faith claim is not subject to the one-year contractual limitation imposed by the State Farm Policy.  As described by the court in Colbert v. Allstate Property and Casualty Insurance Company:

A bad faith claim is independent of an underlying contract claim, and success on a contract claim is not a prerequisite for success on a bad faith claim…Further, bad faith claims are not subject to insurance policies' suit-limitation provisions…Rather, the Supreme Court of Pennsylvania has held that claims of bad faith under Section 8371 are subject to a two-year statute of limitations…

No. 3:20-CV-1066, 2021 WL 5216782, at *6 (M.D. Pa. Aug. 16, 2021) (internal citations omitted).  This two-year statute of limitations begins to run "when coverage is initially denied." Am. Collision & Auto. Ctr., Inc. v. Windsor-Mt. Joy Mut. Ins. Co., No. 11-CV-06947, 2012 WL 4490982, at *6 (E.D. Pa. Sept. 27, 2012).

Plaintiffs' bad faith claim was filed within two years of State Farm's denial of their claims. Therefore, the statute of limitations does not bar Plaintiffs' bad faith claims.  Nevertheless, the Court will dismiss Plaintiffs' bad faith claim pursuant to Federal Rule of Civil Procedure 12(b)(6) for reasons discussed, infra.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S. § 8371.  The statute does not define "bad faith," but the Pennsylvania Superior Court defines bad faith on the part of an insurer as "any frivolous or unfounded refusal to pay proceeds of a policy." Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting Bad Faith, Black's Law Dictionary (6th ed. 1990)).

To succeed on a bad faith claim, "a plaintiff must allege that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claims." Yandrisovitz v. Ohio State Life Ins. Co., No. 18-1036, 2018 WL 4203840, at *4 (E.D. Pa. Aug. 31, 2018) (citing W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 312 (3d Cir. 2003)).  The insurer's conduct need not be fraudulent, but "mere negligence or bad judgment is not bad faith." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotation marks omitted) (Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. 2004)).  "The insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" Id.

Because bad faith claims are fact-specific, to survive a motion to dismiss, "a plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." Toner v. GEICO Ins. Co., 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017) (citing Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012)).  To that end, "[a] plaintiff cannot merely say that an insurer acted unfairly, but instead must describe with specificity what was unfair." Id.

Here, Plaintiffs' bad faith claim in Count II of the SAC is premised on the following allegations regarding Defendant's conduct in handling their insurance claim:

a.  by refusing to adjust Plaintiff's claim for betterments and improvements coverage when it knew that the Greene Countrie Village Condominium Association Master Policy would not pay for same;

b.  by sending correspondence falsely representing that Plaintiff's loss caused by a peril insured against under the Policy was not entitled to benefits due and owing under the Policy;

c.  in failing to complete a prompt and thorough investigation of Plaintiff's claim before representing that such claim is not covered under the Policy;

d.  in failing to pay Plaintiff's covered loss in a prompt and timely manner;

e.  in failing to objectively and fairly evaluate Plaintiff's claim;

f.  in conducting an unfair and unreasonable investigation of Plaintiff's claim;

g.  in asserting Policy defenses without a reasonable basis in fact;

h.  in flatly misrepresenting pertinent facts or policy provisions relating to coverages at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;

i.  in failing to keep Plaintiff or their representatives fairly and adequately advised as to the status of the claim;

j.  in unreasonably valuing the loss and failing to fairly negotiate the amount of the loss with Plaintiff or their representatives;

k.  in failing to promptly provide a reasonable factual explanation of the basis for the denial of Plaintiff's claim;

l.  in unreasonably withholding policy benefits;

m.  in acting unreasonably and unfairly in response to Plaintiff's claim;

n.  in unnecessarily and unreasonably compelling Plaintiff to institute this lawsuit to obtain policy benefits for a covered loss, that Defendant should have paid promptly and without the necessity of litigation.

(Doc. No. 1-5 at 6-7.)  Based on these allegations, Plaintiffs argue that the SAC alleged sufficient facts to state a claim for bad faith that is plausible on its face.  In particular, Plaintiffs argue that the SAC specifies that Defendant "falsely represented that Plaintiffs['] loss was not entitled to benefits due and owing under the Policy, failed to promptly and thoroughly investigate the loss,

and failed to objectively evaluate Plaintiffs['] claims" and that taken together, these establish a plausible claim of bad faith. (Doc. No. 8 at 16.) In turn, Defendant argues that Count II of the SAC should be dismissed because Plaintiffs' claims are "boilerplate and are not remotely specific to any stated activity (or lack thereof) on the part of [Defendant]." (Doc. No. 502 at 8.) As noted earlier, the Court agrees with Defendant. Plaintiffs have based their bad faith claim on conclusory allegations that are insufficient to withstand a motion to dismiss.

Courts have held that allegations like the ones asserted by Plaintiffs are insufficient to state a plausible bad faith claim. For example, in MBMJ Props., LLC v. Millville Mut. Ins. Co., this Court held that the plaintiff's nearly identical allegations of bad faith were insufficient to state a claim under Rule 12(b)(6). No. 18-5071, 2019 WL 1651667, at *6 (E.D. Pa. Apr. 16, 2019). In MBMJ, the plaintiff sued the defendant under its renters' insurance policy, alleging claims of breach of contract and bad faith stemming from the defendant's refusal to pay plaintiff for losses incurred at its rental property. Id. With respect to the plaintiff's bad faith claim, it alleged that the defendant had acted in bad faith under § 8371:

> a.      by sending correspondence falsely representing that Plaintiff's loss caused by a peril insured against under the Policy was not entitled to benefits due and owing under the Policy;
>
> b.      in failing to complete a prompt and thorough investigation of Plaintiff's claim before representing that such claim is not covered under the Policy;
>
> c.      in failing to pay Plaintiff's covered loss in a prompt and timely manner;
>
> d.      in failing to objectively and fairly evaluate Plaintiff's claim;
>
> e.      in conducting an unfair and unreasonable investigation of Plaintiff's claim;
>
> f.      in asserting Policy defenses without a reasonable basis in fact;

13

g.     in flatly misrepresenting pertinent facts or policy provisions relating to coverages at issue and placing unduly restrictive interpretations on the Policy and/or claim forms;

h.     in failing to keep Plaintiff or its representative fairly and adequately advised as to the status of the claim;

i.     in unreasonably valuing the loss and failing to fairly negotiate the amount of the loss with Plaintiff or their representatives;

j.     in failing to promptly provide a reasonable factual explanation of the basis for the denial of Plaintiff's claim;

k.     in unreasonably withholding policy benefits;

l.     in acting unreasonably and unfairly in response to Plaintiff's claim;

m.     in unnecessarily and unreasonably compelling Plaintiff to institute this lawsuit to obtain policy benefits for a covered loss, that Defendant should have paid promptly and without the necessity of litigation.

Id. at **1-2.  The Court in MBMJ stated that "the Complaint is devoid of allegations as to (1) the timing of the alleged investigation in relation to when Plaintiffs submitted their claim, (2) the methods and procedures by which the investigation was conducted, and (3) the length of the investigation from start to finish."  Id. at *6.  As a result, the Court concluded that the plaintiff's claims "lack[ed] the requisite factual support to state a plausible claim of bad faith under § 8371." Id.

Here, Plaintiffs allege that Defendant failed to complete a prompt and thorough investigation of Plaintiffs' claim, that Defendant failed to objectively and fairly evaluate Plaintiffs' claim, and that Defendant failed to fairly and adequately advise Plaintiffs as to the status of their claim.  (Doc. No. 1-5 at 6-7.)  But the SAC is devoid of sufficient allegations as to the timing, methods, procedures, or length of the investigation by which the evaluation was conducted. Therefore, without more, Plaintiffs do not sufficiently allege a bad faith claim and the Count II will be dismissed.

14

### C.    Plaintiffs' Will be Granted Leave to File an Amended Complaint

Federal Rule of Civil Procedure 15(a)(2) instructs that "[t]he court should freely give leave [to amend the complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2); see also Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).  To that end, the Third Circuit Court of Appeals has held that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'"  Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1196-97 (3d Cir. 1994) (quoting Bechtel v. Robinson, 886 F.2d 644, 652-53 (3d Cir. 1989)).

Here, the Court is satisfied that affording Plaintiffs one last opportunity to file a Third Amended Complaint would not cause undue or substantial prejudice to Defendant. This case was removed to this Court on October 9, 2023 and is still in its early stages.   Therefore, allowing Plaintiffs another chance to amend the Second Amended Complaint would not significantly delay the progress of the litigation.  Accordingly, the Court will grant Plaintiffs leave to amend the Second Amended Complaint.  If Plaintiffs are unable to allege plausible facts underlying their claim of bad faith, then the Second Amended Complaint should not be amended.

### V.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. No. 5) will be granted.  The Court will dismiss the Second Amended Complaint without prejudice and grant Plaintiffs leave to file a Third Amended Complaint.  An appropriate Order follows.

15